(C.D. 2378)

Acme Pallet Co., Inc. *v.* United States

United States Customs Court, Second Division

(Decided December 13, 1962)

*Siegel, Mandell & Davidson (David Serko* of counsel) for the plaintiff.
*Joseph D. Guilfoyle,* Acting Assistant Attorney General *(Sheila N. Ziff,* trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: The importation in controversy is described on the invoice attached to the consumption entry as "LEFT (NORMAL) TWIST WIRE NAILS No. 12 x 2½″ Drive Screw type, Cement coated, Chisel Point Nails."

The collector of customs classified the merchandise as "Other iron or steel nails, nspf," and duty was imposed thereon at the rate of 1.3 cents per pound, as provided in paragraph 331 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 331), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108.

Plaintiff claims that the nails are properly classifiable as nails, not less than 1 inch in length and not smaller than 0.065 of an inch in diameter, as provided in said paragraph 331 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, and dutiable, accordingly, at the rate of 0.2 cent per pound.

The pertinent text of the statute above referred to is here set forth.

Paragraph 331 of the Tariff Act of 1930, as modified by the sixth protocol, *supra:*

Horseshoe nails, and other iron or steel nails, not specially provided for _____1.3¢ per lb.

Paragraph 331 of said act, as modified by the General Agreement on Tariffs and Trade, *supra:*

Nails, * * * made of iron or steel wire:
  Not less than one inch in length nor smaller than sixty-five one-thousandths of one inch in diameter_____2/10¢ per lb.

At the trial, plaintiff introduced the testimony of one witness, together with exhibit 1, representing the importation, exhibit 2, consisting of a steel wire gauge for measuring the diameter of nails in the pallet industry, and exhibit 3, a brochure containing pictures of pallets.

The parties do not dispute the fact that the nails in controversy, although principally cylindrical in shape, are made from square wire and that the nails are not less than 1 inch in length.

Counsel for plaintiff claims that the sole issue in the case is whether or not exhibit 1 is 0.065 of 1 inch or more in diameter.

Counsel for the United States contends that this "particular type of nail does not have a measurable diameter."

Plaintiff's witness Glassman testified in substance that he is vice president and chief of engineering of the Acme Pallet Co., Inc., in New York City, engaged primarily in the sale and manufacture of wooden pallets; that, in the manufacture of pallets, the diameter of the nails used in their construction is one of the specifications required. The witness produced a wire gauge, which was received in evidence as plaintiff's exhibit 2, with which he was requested to measure the diameter of exhibit 1. As a result of such measurement, the witness stated, "I receive an approximate dimension of .140 inches as the diameter outside the threads of this drive-screw nail." The witness then added, "Might I state that in measuring a diameter with this gauge, we will be approximate." Glassman testified that the normal specifications for this type of nail is 0.138 plus or minus, but that 0.140 would be acceptable; that a wire gauge, such as exhibit 2, is commonly used in his business for the measurement of the diameter of nails.

On redirect examination, Glassman testified that one manufacturer of drivescrew nails in the United States—The Hillwood Manufacturing Co. of Cleveland—manufactures such nails from square wire and "They refer to the diameter over the threads as decimal gauge."

While it is not entirely clear from the record and the briefs filed herein what may have influenced the collector in rejecting the protest claim of plaintiff, there are surrounding circumstances from which plausible inferences may be drawn.

The Government contends that since the nails were made from square wire and have a shank principally circular in shape but with a small portion of the shank near the head of the nail square or rectangular in shape, the nails do not have a diametrical dimension.

This contention seems to stem from an attempted application of the underlying principle discussed in *Schneider Bros. & Co.* v. *United States*, 13 Ct. Cust. Appls. 519, T.D. 41392. That case dealt with the interpretation of the provision in paragraph 329 of the Tariff Act of 1922, which enumerated "Chain and chains of all kinds, made of iron or steel, not less than three-fourths of one inch in diameter," et cetera, graduated duties being imposed according to the diameter. The court rejected the contention of the importer that the word "diameter," as used in the provision above quoted, referred to the antecedent "chains" and held that it was the intent of Congress to apply the word "diameter" to the words "iron and steel."

The provision in paragraph 331, so far as pertinent here, reads—

Nails, * * * made of iron or steel wire: Not less than one inch in length nor smaller than sixty-five one-thousandths of one inch in diameter.

The text of the two paragraphs (329 and 331), above referred to, differs so much in grammatical structure as to leave no doubt as to the difference in said paragraphs. In the instance of paragraph 329, our appellate court, in the *Schneider* case, *supra*, stated—

The strict rules of grammatical construction will be followed in construing a particular provision of an act of Congress unless it can be seen, from a consideration of all parts of the act and other relevant matters, that such was not the intent of the legislative body. *Irwin* v. *United States*, 2 Ct. Cust. Appls. 296; *Lehn & Fink* v. *United States*, 12 Ct. Cust. Appls. 359. In this case we can not escape the conclusion that the intent of Congress was not to apply the words "in diameter" to the antecedent "chain and chains," but to the words "iron and steel."

Further, the court stated:

It can not be presumed that Congress would declare a thing to be dutiable according to its diameter unless a diameter could be found in the thing itself. To provide that thin sheets of paper should be dutiable according to their diameter would indicate a lack of understanding of the common meaning of that word and would require the ascertainment of something which did not exist. It is equally so in this case when we try to apply diameter to these chains. To ascertain their diameter, within the ordinary meaning of that word, is not possible and, therefore, it must be presumed, and that presumption does no violence to the grammatical construction of the sentence, in view of its history, that Congress clearly intended that such chains as these should be classified for duty according to the diameter of the pieces of metal constituting the links, which is the only thing about the chains that has diameter.

The construction applied to the language in paragraph 329 in the *Schneider* case, *supra*, was followed in *United States* v. *Henry Greenberg & Bros. Export & Import Co., Inc.*, 44 CCPA 48, C.A.D. 636.

Applying the "strict rules of grammatical construction" referred to in the *Schneider* case to the provision in paragraph 331 of the current tariff act with which we are here concerned, based upon the punctuation and arrangement of language, we are led to the conclusion that not only does the length measurement of "Not less than one inch" apply to the antecedent "Nails" rather than to the words "made of iron or steel wire :" but so, too, does the diameter measurement of "nor smaller than sixty-five one-thousandths of one inch."

From the foregoing comparison of language contained in paragraphs 329 and 331, we are of the opinion that whereas the diameter measurement called for in paragraph 329 applies to "the diameter of the material of which the chain is made" (the *Greenberg* case, *supra*) the diameter requirement of paragraph 331 is to be applied to the nails and not to the material of which they are made.

Predicated on the unrefuted testimony of plaintiff's witness Glassman that the nails in issue are used in the manufacture of pallets; that the diameter of the nails used in the construction of pallets is one of the required specifications; that a wire gauge, represented by exhibit 2, is commonly used in the pallet industry in determining the diameter of such nails; and that a measurement of the principal helical shank portion of the nails with the use of said wire gauge discloses that said nails are approximately 0.140 of an inch in diameter, which is larger than 0.065 of 1 inch, specified in paragraph 331, we are of the opinion that the imported merchandise comes within the purview of paragraph 331 of the Tariff Act of 1930, as modified, as claimed by plaintiff.

We are not deterred from our conclusion herein by the fact that there is a short portion of the nail shank under the head of the nail which is square, rather than round, and being square might not be subject to diametrical measurement, no more than we would depart from our position had the head of the nail been square, instead of round. In our opinion, it is the main utilitarian portion of the nail shank which is subject to diameter measurement.

For the foregoing reasons and upon the record here presented, we hold that the nails covered by the instant importation are made of iron or steel wire and that they are not less than 1 inch in length nor smaller than 0.065 of 1 inch in diameter. They are, therefore, within the *eo nomine* provision for such nails in paragraph 331 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, and subject to duty at the rate of 0.2 of a cent per pound. The claim in the protest to that effect is, therefore, sustained.

Judgment will be issued accordingly.