(C. D. 2866)

INDUSTRIAL EXPORT CO. } *v.* UNITED STATES
J. T. STEEB & CO.

United States Customs Court, Second Division

(Decided January 5, 1967)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*Barefoot Sanders*, Assistant Attorney General (*Bernard J. Babb, Charles P. Deem*, and *Avram Weisberger*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

RAO, Chief Judge: The court is here called upon to determine the proper classification for customs duty purposes of certain electric resistance welded steel square tubing with dimensions of 3 inches by 3 inches by 24 feet, 0.093 inch thick, and 4 inches by 4 inches by 20 or 24 feet, $\frac{3}{16}$ inch thick. Upon importation into the United States, the customs authorities classified said merchandise as "Finished or unfinished iron or steel tubes not specially provided for" in paragraph 328 of the Tariff Act of 1930, as modified by the Sixth Pro-

tocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, and assessed duty thereon at the rate of 10½ per centum ad valorem.

The claim relied upon by plaintiffs herein is contained in an amendment to their protest and alleges that the merchandise at bar should properly have been subjected to duty at the rate of only 0.3 cent per pound within the provision in said paragraph 328, as modified, *supra*, which reads—

Lap-welded, butt-welded, seamed, or jointed iron or steel tubes, pipes, flues, and stays, not thinner than 0.065 inch, and not less than ⅜ inch in diameter * * *.

During the trial of this case, certain documents consisting of price-lists and catalogs, or photocopies of portions thereof, were marked "for identification" as plaintiffs' exhibits 5 through 13 inclusive. These documents were offered by plaintiffs in an attempt to corroborate statements made by one of plaintiffs' witnesses that, in the steel tube trade in this country, square tubing is considered to be subject to diametrical measurement. The receipt in evidence of the proposed exhibits was not agreed to by the defendant herein. A ruling on the competency of said documents as evidence was reserved by the trial judge for action by the division deciding the case.

On the point of competency, the following quotation from 32 C.J.S. Evidence § 717 is pertinent—

As a general rule a book or other publication printed by a private person and not shown to be approved by any public authority is not competent evidence of the facts therein stated, at least if it does not appear to be in general use among the class of persons interested in the matters of which it treats, and if on account of the recent occurrence of the facts or for other reasons they may be proved by living witnesses or other better evidence. * * *

In the circumstances, therefore, the proffered exhibits 5 through 13 inclusive, being objectionable on the ground of hearsay, are ruled to be inadmissible in evidence.

In support of their claimed classification, plaintiffs called upon two witnesses to testify in their behalf. The first of them was Robert Parks who for the past 9 years has been engaged in the import and export business under the name of the Industrial Export Co., the nominal and actual importer of the merchandise at bar. He testified to his familiarity with the merchandise covered by the two entries involved herein. Through him a sample tube measuring approximately 2 inches by 2 inches by 14 inches, $\frac{1}{10}$ of an inch thick, was received in evidence as plaintiffs' exhibit 1, with the understanding that it was representative of, rather than identical to, the imported square tubing by virtue of differences in all dimensions including thickness. Copies of the purchase orders were received in evidence as plaintiffs' collective

exhibit 2, and the entry papers covering the merchandise in issue were received in evidence without being marked.

It was Parks' testimony that, during the course of his business, he buys, sells, and imports various kinds of tubing such as square, rectangular, round, and fence tubing and that he has been familiar with this type of merchandise as a trader, buyer, and seller for 15 years. He identified a catalog of EPPS Industries, Inc., entitled "Welded Steel Tubing," which was received in evidence without objection as plaintiffs' exhibit 3, and testified to his familiarity with the cold-rolled welded round tubing described on pages A–1 through A–6 of said catalog. When referred to the initials "O.D." appearing as the caption of the first column, he stated tht "O.D." stands as an abbreviation for outside diameter. He is also familiar with the merchandise described on pages B–1 and B–2 of said exhibit 3 which list the prices for cold-rolled welded tubing, which is square shaped, and stated the letters "O.D." appearing as the caption of the left-hand column likewise referred to outside diameter.

From his education in engineering and his employment as an engineer, he testified to his familiarity with "Marks Mechanical Engineering Handbook." On being shown a photocopy of page xvii of said handbook, third edition (1930), which contained listings of "SYMBOLS AND ABBREVIATIONS," his attention was directed to the abbreviation appearing thereon as "O.D." and the accompanying explanation "outside diameter (pipes)." Said photocopy sheets were received in evidence as plaintiffs' exhibit 4.

Charles Strong, president of a tube warehouse, known as the Strong Tube Company of Richmond, California, was plaintiffs' second witness. The Strong Tube Company sells seamless and welded square, round, and rectangular tubing. Prior to the recent organization of the Strong Tube Company, the witness had been tubular products manager for Jorgensen Steel Company for approximately 7 years, district manager for the Baker Tube Company for about 2 years, and tubular products manager for the Taylor & Spottsworth Company for 5 years, which collectively add up to about 15 years' experience. Strong testified that he has sold square, rectangular, and round tubing along the west coast for the past 10 years and has observed it all over the United States. He stated that he had been familiar with square tubing for between 12 and 15 years. When asked how he would determine the outside diameter of an item such as plaintiffs' exhibit 1, Strong stated that he would measure it "across the flats."

Strong stated that he is familiar with most of the manufacturers of square tubing in the United States and that in the tubing business "O.D." is referred to as outside diameter, whether you are talking about round, square, or rectangular tubing. Strong also stated that the outside diameter of square tubing is its outside dimension and that

the diameter of rectangular tubing would be expressed in two dimensions, such as ¾ inch by 1½ inches.

During the course of the proceedings, counsel for the respective parties stipulated that the letters "O.D." pertain to outside diameter, with counsel for the Government explaining that, whereas he agrees the abbreviation for "outside diameter" is "O.D.," it does not necessarily limit said letters to that meaning.

The testimony of the witnesses herein and the evidentiary value to be ascribed to plaintiffs' exhibits 1 through 4 received in evidence are insufficient to establish that in the trade square tubing is understood to have a diameter measurement and that such a measurement is the length of one of its "faces" or sides.

Inasmuch as the record before the court would not support a holding of a commercial designation for the term "diameter" different from its common connotation, the meaning of the word "diameter" as used in the tariff provision here involved is presumed to be the same as its common or dictionary meaning in the absence of evidence to the contrary. And, as stated in *United States* v. *C. J. Tower & Sons of Buffalo, N.Y.*, 48 CCPA 87, 89, C.A.D. 770, citing *United States* v. *Tropical Craft Corp., Successors to Tropical Craft Import & Export Corp.*, 42 CCPA 223, 227, C.A.D. 598, "In determining common meaning the court may accept or reject evidence of such meaning and may, as an aid, consult dictionaries, and other authorities."

Definitions of the word "diameter" as they appear in several lexicographic authorities are set forth below:

Webster's New International Dictionary of the English Language, second edition (1958).

diameter, *n.* 1. *Geom.* a Any chord passing through the center of a figure or body, as a circle, conic section, sphere, cube, etc. * * * 2. The length of a straight line through the center of an object; thickness; as, the *diameter* of a tree or rock. * * *

Funk & Wagnalls New "Standard" Dictionary of the English Language (1956).

diameter, *n.* 1. A line through the center of a plane figure or solid, terminated at the boundary thereof; the length of such a line; thickness; as, the greatest *diameter* of a boulder. The term is applied mostly to circular and spherical figures. A diameter of a cylindrical body is that of one of its circular sections.

The New Century Dictionary of the English Language (1946).

diameter, *n.* A straight line passing through the center of a circle or sphere and terminated at each end by the circumference or surface; a straight line passing from side to side of any figure or body, through its center; also, the length of a diameter; thickness; width. * * *

While lacking to a degree the definitiveness sought as an aid in determining whether or not a diameter measurement may be found for

square tubing, the definitions above quoted do indicate that to be the diameter of a figure it must be *a straight line passing through the center* of the object being measured. Plaintiffs here attempt to assign as the diameter of the square tubing the length of one of the "faces" or sides of said tubing. In the opinion of the court, predicated on the foregoing authorities, such a measurement is not the diameter of the imported tubing but is a dimension thereof.

In support of their position, plaintiffs cite the case of *Acme Pallet Co., Inc.* v. *United States*, 49 Cust. Ct. 154, C.D. 2378, wherein certain wire nails of the drivescrew type, made from square wire and having a shank principally circular in shape but with a small portion of the shank near the head of the nail square in shape, were held to be susceptible to a diametrical measurement. In coming to that conclusion the court stated—

Predicated on the unrefuted testimony of plaintiff's witness Glassman that the nails in issue are used in the manufacture of pallets; that the diameter of the nails used in the construction of pallets is one of the required specifications; that a wire gauge, represented by exhibit 2, is commonly used in the pallet industry in determining the diameter of such nails; and that a measurement of the principal helical shank portion of the nails with the use of said wire gauge discloses that said nails are approximately 0.140 of an inch in diameter, which is larger than 0.065 of 1 inch, specified in paragraph 331, we are of the opinion that the imported merchandise comes within the purview of paragraph 331 of the Tariff Act of 1930, as modified, as claimed by plaintiff.

We are not deterred from our conclusion herein by the fact that there is a short portion of the nail shank under the head of the nail which is square, rather than round, and being square might not be subject to diametrical measurement, no more than we would depart from our position had the head of the nail been square, instead of round. In our opinion, it is the main utilitarian portion of the nail shank which is subject to diameter measurement.

Plaintiffs attempt to establish an analogy between the determination of the diameter of the wire nails in the *Acme* case and the contended-for diameter of the square tubing presently in issue by the measurement of the tubing "across the flats" or sides. In the opinion of the court, the cases are clearly distinguishable. In the *Acme* case the diametrical measurement of the nails, being a measurement by a straight line passing through the center of the principal helical shank portion of said nails, conforms to the common understanding of the term "diameter" as above set forth, whereas the measurement of the "face" or side of the square tubing at bar results in a dimension and not a diameter.

The question of whether an imported article possesses a measurable diameter was the subject of a recent decision by this division of the Customs Court in the case of *Border Brokerage Co.* v. *United States*, 57 Cust. Ct. 498, C.D. 2854, wherein certain imported chains classified

as parts of machines in paragraph 372 of the Tariff Act of 1930, as modified, were claimed to be more specifically provided for in paragraph 329 of said act, as modified, as chain or chains of all kinds, of iron and steel, having a diameter of ¾ of an inch or more. The chain links there involved were flat sided rather than round. After due consideration of the record in that case and of judicial precedent, the court in overruling the claim of plaintiff took occasion to say—

Where the Congress, in the Tariff Act of 1930, dealt with objects of various shapes assessable by diameter measurement, it provided for like objects not subject to such measurement. For example, paragraph 1527(b) specifies:

Rope, curb, cable, and fancy patterns of chain not exceeding one-half inch in diameter, width, or thickness * * *.

Paragraph 316(a) distinguishes between "Round iron or steel wire," measurable by diameter, and all "flat wires" measurable by thickness.

Since the Congress saw fit, in paragraph 329, to regulate the duty provided for chains solely upon diameter measurements, we would be assuming a legislative function to include other dimensional measurements within the statutory scope.

Inasmuch as the record before us does not support a holding that the instant electric resistance welded steel square tubing possesses a diameter, the merchandise at bar cannot find classification within the claimed provision of paragraph 328 of the Tariff Act of 1930, as modified, *supra*, which is predicated on a diameter measurement, but remains as classified by the collector of customs in the basket provision of said paragraph 328 as "other" finished or unfinished iron or steel tubes, not specially provided for. Accordingly, all claims in the protest are overruled.

Judgment will be entered accordingly.