(C.D. 3922)

Frank P. Dow Co., Inc.
The Banton Corp. } *v.* United States

United States Customs Court, Second Division

(Decided November 14, 1969)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiffs.
*William D. Ruckelshaus*, Assistant Attorney General (*Dominick M. Minerva*
and *Velta A. Melnbrencis*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

NEWMAN, Judge: Presented for our determination in these two consolidated protests is the proper tariff classification of certain square and rectangular welded steel tubes exported from Japan and entered at the port of Portland, Oregon.

The tubes were assessed with duty by the collector of customs at the rate of 10½ per centum ad valorem under the provision in paragraph 328 of the Tariff Act of 1930, as modified by T.D. 54108, for "other" finished or unfinished iron or steel tubes, not specially provided for. Plaintiffs claim that the tubes are properly dutiable at the rate of 0.3 cent per pound under the provision in paragraph 328, as modified, *supra*, for—

> Lap-welded, butt-welded, seamed, or jointed iron or steel tubes
> * * * not thinner than 0.065 inch, and not less than ⅜ inch in
> diameter * * *.

## THE ISSUE

It is conceded by defendant that the merchandise falls within the ambit of "Lap-welded, butt-welded, seamed or jointed iron or steel tubes * * * not thinner than 0.065 inch." Hence the controversy is limited to the construction and application of the language in paragraph 328, as modified: "not less than ⅜ inch in diameter" (R. 26). Respecting the latter phrase there is no dispute that the square tubes measured three inches by three inches, and that the rectangular tubes measured six inches by four inches.

Specifically, the question posed is: Do square and rectangular tubes with the above measurements possess a measurable diameter of not less than three-eighths of an inch? We have concluded that square and rectangular tubes do not possess a measurable diameter, and accordingly the protests are overruled.

## INDUSTRIAL EXPORT CO. CASE

The parties agree that the instant case is a retrial of the issue presented in *Industrial Export Co. et al.* v. *United States*, 58 Cust. Ct. 1, C.D. 2866 (1967), wherein the court, in overruling the protest, held that the record did not support a holding that electric resistance

welded steel square tubing possessed a diameter. Consequently, the tubing was held not to be classifiable within the claimed provision of paragraph 328, as modified, which is predicated upon a diameter measurement; but rather was properly classified by the collector of customs in the basket provision of paragraph 328, as modified, as "other" finished or unfinished iron or steel tubes, not specially provided for.

In the prior case, the court reviewed several definitions of the word "diameter" and concluded, that "diameter" is a straight line passing through the center of the object being measured. There, the plaintiffs had attempted to establish the length of one of the "faces" or sides as the diameter of the square tubing. Predicated upon the quoted definitions, the court held that such a measurement is not the "diameter" of the tubing, but is merely a dimension thereof.

## Summary of Arguments

In the present case, plaintiffs contend that their additional testimony and arguments establish that dictionary definitions of the term "diameter" are not limited to circular objects; that square or rectangular objects possess a diameter within the common meaning of that term, which may be determined by passing a line through the center of such objects; and that determined in the foregoing manner, the imported square and rectangular tubes possessed a diameter in excess of three-eighths of an inch.

Alternatively, plaintiffs argue that square or rectangular tubes formed from round tubing having a diameter in excess of three-eighths of an inch possess the requisite diameter to sustain their claim.

Defendant contends that even if a square or rectangular tube can be found to have a center through which a line can be passed, such a line is not the diameter contemplated under paragraph 328, as modified.

## The Record

At the trial, plaintiffs moved to incorporate the record in *Industrial Export Co.*, *supra*, which application was granted by the trial judge. Additionally, plaintiffs presented the testimony of two witnesses: Werner F. Chilton, a graduate electrical engineer and president of Banton Corp. (one of the plaintiffs), an importer and seller of various metal products and the ultimate consignee of the tubes in issue; and Karl Kohler, an hydraulic mechanical engineer, and chief engineer with Voith Company, a manufacturer of turbines, paper machines, and gears.

A piece of tubing illustrative of the imported merchandise, and three documentary exhibits, were also introduced in evidence.

Defendant called two witnesses: E. P. McElhany, assistant to the general manager of Pacific Coast sales for Bethlehem Steel Corp.;

and Allen N. Johnson, service supervisor for United States Steel Corp. The court, of course, can take judicial notice of the fact that these corporations are two of the largest steel producers in the world.

In substance, Mr. Chilton testified that the instant tubes have a measurable diameter, which is not less than three-eighths of an inch; that the term "diameter" is not limited to circular objects; and that the diameter of the tubes is measured "from the outside wall to the outside wall across the center point of the tube" (R. 25). Chilton stated that the center of a square or rectangular tube is determined by drawing diagonal lines from the corners, and the center is where the diagonal lines meet. According to Chilton, the diameter of square tubing is equal to the length of any one of its sides, whereas in rectangular tubing there are two diameters—a "narrow diameter and a long diameter" (R. 25–26).

Additionally, Mr. Chilton stated that although the instant tubes were square or rectangular when imported, they were formed from round welded tubes, the diameter of which was not less than three-eights of an inch.

Plaintiffs' second witness, Kohler, testified regarding the method of determining the center of triangles and rectangles in his engineering practice, for such purposes as calculating centers of gravity, area, strength, and stress.

Defendant's two witnesses testified that their respective companies— Bethlehem Steel Corp. and United States Steel Corp.—do not utilize outside diameter (O.D.) measurements in connection with square or rectangular tubes, but rather their companies designated the size of such tubes in accordance with the outside wall dimensions, wall thickness, and length; that they had never encountered the use of diameter measurements in connection with square or rectangular tubes; and that diameter measurements apply only to materials which are cylindrical or have a circular cross section.

Johnson conceded that the center of exhibit 1 (square tube) could be determined by crossing diagonal lines from corner to corner; nevertheless, in his opinion, that method could not be used to determine the center of a rectangle since the sides would not be of equal distance from where the diagonal lines meet.

### THE LAW

Paragraph 328 of the Tariff Act of 1930 imposes graduated rates of duty on lap-welded, butt-welded,[1] seamed, or jointed iron or steel

---

[1] For the distinction between lap-welded and butt-welded tubes see *Summary of Tariff Information*, 1929, Schedule 3, pages 698–699. Butt-welded and lap-welded tubes are distinguished from electric welded tubes in the 1948 *Summaries of Tariff Information*, Schedule 3, page 200.

tubes, pipes, etc., not thinner than 0.065 inch, according to the diameter of such merchandise—the smaller the diameter the higher the rate of duty. It is readily apparent from the nature of the statute that such statute is applicable only to the named articles if susceptible of diametrical measurement.

We now deal with the issue of whether square and rectangular tubes are susceptible of a diametrical measurement. Inasmuch as there is no evidence of a commercial designation for the term "diameter" different from its common meaning, the duty of this court is to give that word only such interpretation as is justified by its common or ordinary signification. *Industrial Export Co.*, *supra*. It is fundamental that tariff statutes are couched in terms of common speech rather than in those of scientists or mathematicians. *Autoridad de Tierras de Puerto Rico* v. *United States*, 37 Cust. Ct. 204, 207, C.D. 1824 (1956). Moreover, since Congress specified that diameter measurements would be a basis for assessment of duties in the provision in paragraph 328 under consideration, it is not the province of this court to substitute other dimensional measurements, thereby assuming a legislative function. *Border Brokerage Co.* v. *United States*, 57 Cust. Ct. 498, 499, C.D. 2854 (1966).

The common meaning of the term "diameter" is a question of law, not of fact, and the court in arriving at that meaning, is not bound by the testimony of witnesses, which is merely advisory, but may consult dictionaries or other authorities, or draw from its own knowledge. *Childrens Hose, Inc.* v. *United States*, 55 Cust. Ct. 6, C.D. 2547 (1965).

Plaintiffs admit that the common meaning of the term "diameter" is most frequently used in connection with cylindrical objects, but insist that such term does not require that the object measured be circular. To buttress their contention, plaintiffs heavily rely upon dictionary definitions, and the evidence adduced at the trial.

In *Border Brokerage Co.*, *supra*, this court considered whether certain imported chains possessed a measurable diameter for purposes of classification under paragraph 329 of the Tariff Act of 1930, as modified. In determining the common meaning of the term "diameter," the court reviewed several dictionary definitions, and commented (57 Cust. Ct. at 500):

> Resort to lexicographic authorities in the instant case for purposes of resolution is inconclusive. For while one authority defines the term "diameter" simply as the length of a straight line through the center of an object (Webster's Seventh New Collegiate Dictionary, 1963), a second would apply it "mostly to circular and spherical figures" (Funk & Wagnalls New Standard Dictionary, 1956), while a third would restrict it to "the thickness of a cylindrical or spherical body" (The Century Dictionary, 1899), and a

fourth would use it in reference to "a circle, conic section, sphere, cube" (Webster's Third New International Dictionary, Unabridged, 1965).

In the incorporated *Industrial Export Co.* case, several definitions of the term "diameter" were also reviewed by the court, and again were found to be inconclusive as to whether a diameter measurement may be found for square tubing.

In the present case, we are unable to perceive that any useful purpose would be served by further considering these same definitions, or quoting from additional lexicographic authorities relied upon by plaintiffs. In point of fact, none of the definitions which we have read specifically mention that the term diameter is applicable to squares or rectangles. Based upon the court's own knowledge of the common or ordinary usage of diametrical measurements, we are clear that it is not in accord with common parlance to apply "diameter" to square or rectangular objects.

It is also contended by plaintiffs that "no overriding legislative policy is served by attempting to distinguish between round welded tubing on the one hand and oval, elliptical, square, or rectangular welded and seamed tubing on the other hand." We do not agree. Indeed, we note that percisely such legislative policy was made more evident in the Tariff Schedules of the United States, effective August 31, 1963, than in paragraph 328 of the Tariff Act of 1930. With respect to iron or steel tubes, the TSUS expressly distinguishes between circular and other tubes by use of the words "and of circular cross-section" in connection with items 610.30 and 610.37, which correspond to paragraph 328 of the Tariff Act of 1930.

Notwithstanding that the common meaning of the term "diameter" is a question of law, the court has carefully considered the evidence adduced at the trial, including the incorporated record.

In the prior case, plaintiffs' witness Strong testified that the outside diameter of the square tubing would be measured "across the flats" (sides), and that the outside diameter of such tubing was its outside dimension. See 58 Cust. Ct. at pages 3-4. By contrast, in the present case, plaintiffs' witness Chilton at first expressed unfamiliarity with the term "flats," but after an explanation by the trial judge,[2] Chilton stated that he would measure the diameter of exhibit 1 across the center—at right angles to the "flats" (R. 24-25). However, in subsequent testimony, Chilton conceded that exhibit 3, a price schedule of the Standard Tube Company, was "illustrative in writing of [his]

---

[2] The trial judge explained that the "flats" refer to "the flat portion" of exhibit 1 (R. 24).

testimony for measuring the diameter across the flats"[3] (R. 28–29).
We thus find the testimony of Chilton inconsistent, or at best, somewhat confusing.

In any event, we find defendant's evidence clearly sufficient to rebut that presented by plaintiffs. The testimony of witnesses McElhany and Johnson impresses us as being consistent, clear and convincing that diameter measurements do not apply to square or rectangular tubes, and are applicable only to those which are cylindrical or have a circular cross section.

McElhany had been connected with the steel industry for twenty-eight years, and Johnson had been employed by United States Steel Corp. for thirty-one years. It is highly significant that despite their long experience in the industry, neither witness had encountered the use of diameter measurements in connection with square or rectangular tubes. Defendant's evidence thus lends substantial support to the conclusion which we have reached that the common meaning of the term "diameter" is not applicable to square or rectangular tubes.

We now proceed to consider plaintiffs' alternative contention that the square and rectangular tubes should be classified on the basis of the diameter of the stock from which they were made, viz., round tubing having a diameter in excess of three-eighths of an inch.

Plaintiffs have called to our attention *Schneider Bros. & Co.* v. *United States*, 13 Ct. Cust. Appls. 519, T.D. 41392 (1926), wherein the court of appeals, in construing paragraph 329 of the Tariff Act of 1922, held that the diameter of automobile skid chains was to be determined by the diameter of the material of which the chains were made, i.e., the pieces of metal constituting the links.[4]

In paragraph 329, *supra*, the language was: "Chain and chains of all kinds, made of iron or steel, not less than three-fourths of an inch in diameter," and other diameters. Thus, the words "Chain and chains" were antecedent to "made of iron or steel" in the paragraph. Applying the strict rules of grammatical construction, the court held that the words "in diameter" modified the antecedent words "iron and steel" rather than "Chain and chains." Moreover, the court of appeals pointed out that since it was not possible to ascertain the diameter of the chains, it must be presumed that Congress intended that the

---

[3] Page 5 of this exhibit is entitled "STANDARD STRUCTURAL STEEL TUBING." On the upper lefthand side of the page appears a heading, "Outside Diameter," beneath which is a subheading "Largest Outside *Dimension* Across Flats." [Emphasis added.]

[4] Subsequently, there were several cases covering certain roller chains which were found not to have a measurable diameter, applying the principle enunciated in *Schneider* that the diameter of a chain is determined by the diameter of the material of which the chain is made. *Henry Greenberg & Bros. Export & Import Co., Inc.* v. *United States*, 44 CCPA 48, C.A.D. 636 (1957); *Same* v. *Same*, 46 CCPA 108, C.A.D. 709 (1959); *Border Brokerage Co.* v. *United States*, 51 Cust. Ct. 210, Abstract 68002 (1963); *Same* v. *Same*, 57 Cust. Ct. 498, C.D. 2854 (1966).

chains should be classified according to the diameter of the pieces of metal constituting the links.

*Schneider Bros.* is readily distinguishable from the present case for primarily two reasons:

First, the phraseology of paragraph 329, *supra*, differs materially from that in paragraph 328, presently under consideration. In the latter paragraph, the words "iron or steel" are antecedent to "tubes, pipes, flues, and stays," whereas in paragraph 329 the words "iron or steel" come after "Chain and chains of all kinds." No rule of grammatical construction has been called to our attention by plaintiffs (and we know of none) which would relate the various diameters specified in paragraph 328 to the words "iron or steel" rather than to the more closely antecedent words "tubes, pipes, flues and stays."

Second, since applying the term "diameter" according to its common meaning, to round or cylindrical tubes presents no difficulty, it cannot be presumed that Congress intended that square or rectangular tubes be classified according to the diameter of the stock from which they were made.

Hence, the well-settled rule in customs law that merchandise is classifiable in accordance with its condition, as imported, is applicable to the present case. The merchandise which was classified by the collector comprised square and rectangular tubes, and it is immaterial that prior to importation, at one stage in the manufacturing process, the tubes were round.

For the foregoing reasons, we find that plaintiffs' alternative contention—that the imported tubes should have been classified in accordance with the diameter of the stock from which they were made— is entirely lacking in merit.

Before concluding, one additional observation is warranted. We have noted that plaintiffs do not claim that the involved tubes are either "lap-welded" tubes or "butt-welded" tubes, but rather that the instant tubes fall squarely within the common meaning of the term "seamed, or jointed." Defendant has not disputed this contention, nor has it raised any issue in its brief as to whether a *welded tube* (other than lap-welded or butt-welded)[5] is classifiable as *seamed or jointed* within the purview of paragraph 328. Since our conclusion that the imported tubes do not possess a measurable diameter is dispositive of plaintiffs' claim, we need not decide the issue of whether the instant welded tubes are "seamed, or jointed," as claimed by plaintiffs.

In summary, then, the additional evidence and arguments presented by plaintiffs fail to convince us that the court's prior holding in

---

[5] As indicated by the incorporated record, the tubes involved in the present case are "electric resistance welded."

*Industrial Export Co.* is erroneous. Accordingly, we adhere to that decision.

The protests are overruled, and judgment will issue in conformity therewith.